```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT


Elizabeth Leopold,                    :
     Petitioner,                      :
                                      :
     v.                               : File No. 1:06-CV-00026
                                      :
Robert D. Hofmann,                    :
Commissioner Vermont Department       :
of Corrections,                       :
     Respondent.                      :
```

## MAGISTRATE JUDGE'S REPORT & RECOMMENDATION
(Document 1)

Petitioner Elizabeth Leopold ("Leopold") has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging her conviction for operating a vehicle under the influence of intoxicating liquor, Vt. Stat. Ann. tit. 23, § 1201(a)(2). Leopold claims the trial court violated her Third, Sixth and Fourteenth Amendment rights to a jury trial and due process by refusing to instruct the jury on the affirmative defense provided in Vt. Stat. Ann. tit. 23, § 1201(f). For the reasons set forth below, I recommend that the Court DENY Leopold's motion.

FACTUAL AND PROCEDURAL BACKGROUND

The relevant factual background as described by the Vermont Supreme Court is repeated here. State v. Leopold,

2005 Vt. 94, 889 A.2d 707 (2005).  These facts are undisputed.

On the night of November 22, 2002 Hardwick police officer Joey LaFlamm was on patrol in Greensboro when he observed Leopold's car parked by the side of the road near a cemetery.  He noted that the car's engine was running, and that Leopold was sitting in the driver's seat.  When Officer LaFlamm asked Leopold what she was doing, she said that she was listening to the radio and needed some time to herself.  He then made a note of the car's license plate number and drove away.

Officer LaFlamm continued his patrol through Greensboro for approximately thirty minutes, during which time the police dispatcher advised him that Leopold's car was registered to Jane Woodruff, whose driver's license had expired.  He then returned to the location where he had spoken with Leopold, and observed that, though the engine remained running, the car had not moved.  Officer LaFlamm approached the car, addressed Leopold as Ms. Woodruff, and advised her that her license had expired.  Leopold became angry and told Officer LaFlamm that she was not Ms. Woodruff, and that her license was not expired.

During this exchange, Officer LaFlamm smelled alcohol on Leopold's breath, and he asked her to get out of the car and perform a series of roadside sobriety tests. Although Leopold refused to submit to a preliminary breath test, Officer LaFlamm noted that her eyes were bloodshot, that her speech was impaired, and that she swayed noticeably as she walked. Officer LaFlamm then arrested Leopold for operating a vehicle while intoxicated.

Leopold pleaded not guilty to the charge and demanded a jury trial, which was conducted in Chittenden Superior Court on November 21, 2003.

At trial, Jane Woodruff testified that she and Leopold each had one drink between nine and eleven o'clock on the night Leopold was arrested. Woodruff said she went to sleep at eleven and did not see Leopold again until after the arrest, but she testified that Leopold described the night's events to her in detail a few days later. Leopold told Woodruff that she had poured some liquor into a travel mug and taken it with her to the cemetery at about 11:30 p.m. Leopold said she parked the car by the side of the road before drinking the liquor, and she never moved the car again before her arrest. Finally, Woodruff testified that

Leopold told her that she "wanted to die" at the cemetery that night.

At trial, Leopold requested a jury instruction on § 1201(f), which states that "the defendant may assert as an affirmative defense that the person was not operating, attempting to operate, or in actual physical control of the vehicle because the person: (1) had no intention of placing the vehicle in motion; and (2) had not placed the vehicle in motion while under the influence." Vt. Stat. Ann. tit. 23, § 1201(f). The court refused this request because Leopold had not presented sufficient evidence of "a particular subjective intent not to operate" the vehicle. (Doc. 1, Ex. C at 273). The jury found Leopold guilty as charged.

Leopold moved for a new trial and for judgment of acquittal notwithstanding the verdict. She argued that the court erred by denying her a jury determination on the affirmative defense despite sufficient prima facie evidence. The court denied these motions. Leopold requested the court to reconsider the denial of her motions and/or to provide a more adequate statement of its findings and rationale. The court refused.

On April 16, 2004, the trial court held a sentencing

hearing and imposed a $300 fine.  The court agreed to stay the sentence while Leopold appealed her conviction to the Vermont Supreme Court.

Leopold raised two issues on appeal to the Supreme Court.  First, she argued that since the affirmative defense negates an element of the crime, due process requires the State to prove beyond a reasonable doubt that the affirmative defense does not apply.  She argued that the State did not meet this burden.  Leopold argued in the alternative that a jury instruction should have been given because she met her burden of presenting prima facie evidence of the elements of the affirmative defense.

On August 2, 2005, the Vermont Supreme Court affirmed Leopold's conviction.  Leopold filed a motion for reargument, which the Vermont Supreme Court denied on November 9, 2005.

On January 13, 2006, Leopold filed a motion with the Orleans District Court requesting a modified sentence.  Because of financial hardship, Leopold requested administrative probation with an underlying sentence of zero to 30 days.  On January 18, 2006, Leopold was sentenced to a term of a maximum of thirty days, all suspended with

probation.  The terms of Leopold's probation include reporting to a probation officer as instructed and a payment schedule that divides the $300 fine into four payments.

Leopold filed the present petition for a writ of habeas corpus on February 3, 2006.

## DISCUSSION

### I.  Standard of Review

An individual "in custody pursuant to the judgment of a State court . . . in violation of the Constitution or laws or treaties of the United States" may file a petition for a writ of habeas corpus to challenge her conviction and/or sentence.  However, "[o]nce a claim has been adjudicated on the merits by the state court, our review of the state court's decision is subject to the deferential standard set out in section 104(3) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, 1219 (codified at 28 U.S.C. § 2254(d)).'" Earley v. Murray, Docket No. 04-4098, 2006 WL 1579547, at *2 (2d Cir. June 9, 2006)(internal quotation omitted).  This petition will not be granted with respect to any claim that has been adjudicated on the merits in a state court unless that adjudication:

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A claim is adjudicated "on the merits" within the meaning of § 2254(d), when the decision is "based on the substance of the claim advanced, rather than on a procedural, or other, ground."  Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (internal quotation marks and citations omitted).

In Williams v. Taylor, the Supreme Court held that a state court decision is "contrary to" clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result.  529 U.S. 362, 405-06 (2000); Lainfiesta v. Artuz, 253 F.3d 151, 155 (2d Cir. 2001).  A state court decision is based on an "unreasonable application" of federal law when "the state court identifies the correct governing legal

7

principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Lainfiesta, 253 F.3d at 155 (changes in original) (quoting Williams, 529 U.S. at 413). However, the state court's decision must be more than simply "an incorrect or erroneous application of federal law." Id. (quoting Williams, 529 U.S. at 412). It must "reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)).

Furthermore, errors of state law are not subject to federal habeas review. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). To be entitled to habeas relief, a petitioner must demonstrate that the conviction resulted from a state court decision that violated federal law. Id. at 68.

II. Custody

The State contends that Leopold's petition must be dismissed because she is not "in custody" as required by § 2254.

A. Administrative Probation

The State argues that administrative probation to pay a fine is not a significant restraint on Leopold's liberty

that satisfies the "in custody" requirement.

As noted above, the trial court originally sentenced Leopold to pay a fine of $300. The court modified the sentence and added a maximum of 30 days confinement. This additional sentence was suspended and Leopold was put on administrative probation. The terms of her probation include reporting to a probation officer and making scheduled payments of the fine.

It is well settled that an individual on probation or parole is in custody for purposes of habeas relief. Poodry v. Tonawanda Band of Seneca Indians, 85 F.3d 874, 893-895 (2d Cir. 1996); United States ex rel. B. v. Shelly, 430 F.2d 215, 217 (2d Cir. 1970). This is so because "probation and parole are frequently conditioned upon terms that seriously restrain the individual's liberty. . . . [Also] the possibility that probation or parole will be revoked and the individual will be incarcerated for the remainder of the sentence is ever imminent." Tinder v. Paula, 725 F.2d 801, 803 (1st Cir. 1984) (citing Jones v. Cunningham, 371 U.S. 236 (1963)).

In this case, the court order for administrative probation expressly states, "The execution of the sentence

is suspended and the defendant is placed on probation in the care and custody of the Commissioner of Corrections for the term(s) as shown above under the following conditions." (Doc. 1, Ex. A).  The conditions of Leopold's probation include reporting to her probation officer as instructed and paying the fine.  There can be little dispute that this probation and the underlying suspended sentence subject Leopold to actual restraints on her liberty as well as the imminent threat of such restraint if she violates the conditions of her probation.  Therefore, Leopold's suspended sentence and administrative probation create sufficient restraints to establish custody for purposes of habeas relief under § 2254.

B.  Voluntary Custody

The State also argues that even if Leopold's sentence is custodial, she is not entitled to habeas relief because she requested the custody.  This court need not decide whether habeas relief is available to a petitioner who voluntarily submits to custody because in this case, even assuming Leopold is in custody, she has failed to present a cognizable federal claim.

III. <u>Federal Claim</u>

Leopold argues that she was denied due process and a right to a fair jury trial because the court did not instruct the jury on her affirmative defense.[1]

"States are free to define the elements of, and defenses to, crimes." <u>Davis v. Strack</u>, 270 F.3d 111, 123 (2d Cir. 2001). Therefore, generally "the fact that the [jury] instruction was allegedly incorrect under state law is not a basis for habeas relief." <u>McGuire</u>, 502 U.S. at 71-72. However, a claim that the state trial court did not properly instruct the jury on an affirmative defense is cognizable under § 2254 if the petitioner establishes "that he was erroneously deprived of a jury instruction to which he was entitled under state law . . . **and** the erroneous failure to give such a charge was sufficiently harmful to make the conviction unfair." <u>Davis</u>, 270 F.3d at 123-24 (emphasis added). The petitioner must show:

> not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which is guaranteed to the defendant by the Fourteenth Amendment.

---

[1] Leopold has also claimed that the alleged error in the jury instructions violated the Third Amendment, which states "No soldier shall, in time of peace be quartered in any house, without the consent of the Owner, nor in time of war, but in a manner to be prescribed by law." Leopold has not elaborated on or provided any support for this claim and it will not be addressed by this Court.

> The question is not whether the trial court gave a faulty instruction, but rather 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.

Id. at 123.

Leopold argues that the undisputed evidence warranted a jury instruction on the § 1201(f) affirmative defense. According to Leopold, the court's failure to give this instruction to the jury deprived her of her right to due process and to contest an essential element of the State's case. However, "due process does not require the giving of a jury instruction when such charge is not supported by the evidence." Blazic v. Henderson, 900 F.2d 534, 541 (2d Cir. 1990).

The elements of the § 1201(f) affirmative defense are that the defendant: "(1) had no intention of placing the vehicle in motion; and (2) had not placed the vehicle in motion while under the influence." Vt. Stat. Ann. tit. 23, § 1201(f). According to Leopold, the following undisputed evidence introduced at trial is prima facie evidence of a § 1201(f) affirmative defense. At 11:00 p.m. on the evening of November 21, 2002, Leopold was at home in Greensboro, Vermont and was exhibiting no signs of alcohol intoxication.

She left her Greensboro home at 11:30 p.m.  She drove directly to a nearby cemetery where her domestic partner's deceased father was buried.  The drive from Leopold's Greensboro home to the cemetery took no more than five minutes.  Leopold arrived at the cemetery at 11:35 p.m.  Her first encounter with Officer LaFlamm was at 1:13 a.m. on November 22, 2002.  At that time, Officer LaFlamm observed no signs of alcohol impairment, and then left the scene.  Officer LaFlamm returned to the scene and found Leopold in the same position.  The vehicle was still running and had not been moved from the position it held during Officer LaFlamm's first encounter with Leopold.  Leopold was parked at the cemetery from 11:35 p.m. on November 21, 2002 to 1:48 a.m. on November 22, 2002, a period of two hours and 13 minutes.  Leopold went to the cemetery to "talk to Frank" and she wanted to die.

> According to the Vermont Supreme Court,
>
> Officer LaFlamm testified that [Leopold] had not moved the vehicle during the thirty-minute interval between his conversations with her, but the [trial] court did not find this evidence probative of [Leopold's] future intentions.  Without any further evidence that she did not intend to move the car, the [trial] court concluded that [Leopold] had not satisfied the burden of production necessary to go forward with the defense.

Leopold, 2005 Vt. 94 at ¶ 10.  The supreme court concluded that since Leopold "did not present sufficient evidence to establish such a prima facie case," the trial court was correct in refusing to give the § 1201(f) jury instruction. Id. at ¶ 11.

The decisions of the trial court and the supreme court are based on a reasonable assessment of the evidence.  A defendant is entitled to a jury instruction on a defense when the defendant can present "a prima facie case on each of the elements of the defense asserted."  State v. Squires, 147 Vt. 430, 431 (1986) (quoting State v. Knapp, 147 Vt. 56, 59 (1986)).  In other words, if a jury could conclude on the evidence presented that the requirements of the defense are met, then the jury should be instructed on the affirmative defense.  State v. Cram, 157 Vt. 466, 469 (1991)(citing State v. Shotton, 142 Vt. 558, 561 (1983)).

In this case, there is insufficient evidence from which a jury could conclude that Leopold did not intend to put the car in motion.  Leopold's hearsay[2] statement to Woodruff that she went to the cemetery "to talk to Frank and that she just wanted to die," (Doc. 1, Ex. C at 198), was the only

---

[2] Leopold did not testify at the trial.

evidence presented at trial and relied upon by defense counsel to support Leopold's claim that she did not intend to move the car. Although "wanting to die" might indicate the magnitude of Leopold's depression at the time, this general statement of mental health is not indicative of Leopold's intentions regarding moving her vehicle.

Additionally, even assuming Leopold had presented prima facie evidence of her intention not to move the car, she has not convinced this Court that failure to instruct the jury "so infected the entire trial that the resulting conviction violates due process." Davis, 270 F.3d at 131. "[T]he burden on a petitioner attacking a state court judgment based on a refusal to give a requested jury instruction is especially great because 'an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of law.'" Tyler v. Nelson, 163 F.3d 1222, 1227 (10th Cir. 1999) (quoting Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995) (quoting Henderson v. Kibbe, 431 U.S. 145, 156-57 (1977).

In Davis, the court decided that the failure to instruct the jury on a justification defense was an error of state law that "completely deprived [the defendant] of his

15

highly credible defense to the homicide charge and guaranteed his conviction." 270 F.3d at 131.  The court reasoned that because the defendant admitted intentionally shooting the victim, failure to instruct on justification in New York where justification is a defense that the government must disprove beyond a reasonable doubt, foreclosed the question of his guilt for homicide.  Id.  The Davis court distinguished Balzic, where the failure to instruct the jury on justification was not a due process violation because it related to a secondary defense that was inconsistent with the defendant's testimony.  Id.  In making this contrast, the Davis court noted that "[t]his is not a case of a minor error of state law in explaining the legal standards to the jury.  It is not a case of a refusal to instruct on a fantastic, improbable defense that the jury was unlikely to adopt."

   Leopold argues that she was deprived her right to contest an essential element of the crime.  This argument revisits the argument presented to the Vermont Supreme Court that the affirmative defense negates an element of the crime and therefore the burden is on the State to prove that she intended to put the car in motion.  The Supreme Court

decided that the affirmative defense does not negate any element of the crime.  Therefore, failure to give the jury instruction did not prevent Leopold from contesting the elements of the crime charged.

In this case, Leopold has not established that the alleged error in the jury instruction rendered her conviction fundamentally unfair.

## CONCLUSION

For the foregoing reasons, I recommend that the Court DENY Leopold's petition for a writ of habeas corpus.

Dated at Burlington, in the District of Vermont, this 26th day of June, 2006.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify portions of the proposed findings, recommendations or report objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).